## Reinert v. Erie Insurance Group

C.P. of Lehigh County, no. 82-C-2330.

*Gregory L. Schell,* for plaintiff.
*John W. Ashley,* for defendant.

DAVISON, *J.,* July 31, 1987—We have before us, following a non-jury trial, the question of whether plaintiff is entitled to recover income loss benefits under the provisions of the Motor Vehicle Financial Responsibility Law, Act of Feb. 12, 1984, P.L. 26, 75 Pa.C.S. §1701 et seq. Under the act, a claimant may seek income loss benefits up to a monthly maximum of $1,000 (section 1711), which is to include 80 percent of actual loss of gross income (section 1712(2)(i) ). We conclude that plaintiff has established entitlement to such benefits, as well as, under the circumstances, interest and attorney's fees.

Plaintiff was injured in an automobile collision on February 4, 1986. Defendant contends that plaintiff, who, at the time of the incident, was a real estate agent employed on a commission-only basis by Craig Scharadin, a real estate broker, had no actual definable loss of income, hence, is not entitled to benefits for "actual loss of gross income." At trial, defendant conceded that, at the carrier's request, plaintiff submitted the proffered "wage and salary verification" form, estimating her monthly income to be $2,000. Plaintiff testified that, armed with her Lehigh County Community College certificate in

real estate sales, she began employment with ·Scharadin in June 1985. The collision in which she was injured took place some seven months later, as a result of which she sustained lacerations to her head, requiring 23 stitches and shaving of her hair, and broken bones in her left hand. That she was unable to work the first two weeks in February, worked part-time for the remainder of that month, and resumed full-time work on March 1 was not controverted. She explained that she returned on a part-time basis for two weeks because of her inability to drive with only one hand, which prevented her from escorting prospective home buyers to sales sites, and her self-consciousness about her appearance due to her head and facial injuries. For the two weeks plaintiff was out of the office completely, she lost her "phone time," under which, as Scharadin explained, each salesperson was assigned weekly hours during which the salesperson was permitted to retain as a client(s) all prospective caller(s)/ buyer(s) who telephoned or walked into the office during such time. Plaintiff's evidence also included her 1985 realtor earnings of approximately $17,200, and the agreements of sale she produced during January to March 1986 which eventually went to closings.

Based upon the foregoing, we conclude that plaintiff has established an actual loss of gross income which the act was intended to recompense. Although there appears to be a dearth of decisional authority under the new Financial Responsibility Law, a review of case law interpreting "work loss" under the former No-fault Act, although not binding, is instructive as that was similarly defined as loss of gross income, 40 P.S. § 1009.403 (repealed) (Purdon Supp. 1987). Work loss benefits were awarded under the No-fault Act in the absence of

guaranteed income or inability to work regardless of the occurrence of injury. See *Erie Insurance Exchange v. Roule,* 279 Pa. Super. 40, 420 A.2d 733 (1980) (worker entitled to benefits where injured during period his labor union was on strike, even though he was entitled to no pay during the strike); *Mattia v. Employers Mutual Companies,* 294 Pa. Super. 577, 440 A.2d 616 (1982) (where by remanding the court recognized that work loss benefits were due). Income loss benefits are similarly warranted in the instant case; therefore, plaintiff will be awarded a sum based upon the following: $400 for one week of full-time work loss (the first five days of work loss is excluded under section 1712), and $200 for each of two weeks of part-time work, for a total of $800, 80 percent of which is $640.

We further conclude that plaintiff is entitled to interest and attorney's fees. Section 1716 of the Financial Responsibility Law provides that:

"Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12 percent per annum from the date benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended."

Plaintiff's wage and salary verification submitted to defendant bears the date of receipt of March 18, 1986; hence benefits became due thereafter and de-

fendant is obliged to pay to plaintiff 12 percent interest from March 18, 1986. Further, defendant acted unreasonably in denying plaintiff's requested benefits, thereby entitling plaintiff to counsel fees. We were favorably impressed by plaintiff's diligence, forthrightness and her returning to work rather promptly and regard defendant's denial of her modest request for benefits as an unwarranted and unreasonable interpretation of a law designed to compensate victims expeditiously and fairly.

Having determined that counsel fees are properly payable, we next turn to what constitutes a proper sum. Plaintiff's counsel seeks approximately $2,200 for 29 hours expended in preparation of the case. Though these fees amount to slightly more than plaintiff's initial claim and significantly more than the ultimate award, this stands as only one element to be considered. Defendant's failure to meet the provisions of plaintiff's insurance coverage and its refusal to satisfy the claim submitted were unreasonable. Furthermore, defendant's specific actions, particularly in the serving of 31 pages of interrogatories, necessitated enhancement of the legal representation required to protect plaintiff's position. After reviewing plaintiff counsel's time sheets, we perceive her counsel's efficiency and diligence, as well as the reasonableness of the fees and actual time spent in representing her. Considering all factors, we deem $1,500 as appropriate.

## ORDER

Now, July 31, 1987, following non-jury trial, the court finds in favor of plaintiff, Janet Reinert, and against defendant, Erie Insurance Group, as follows:

(1) Income loss benefit — $640;

(2) Interest at the rate of 12 percent per annum from March 18, 1986;

(3) Reasonable attorney's fee — $1,500.